UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
COVINGTON

CRIMINAL ACTION NO. 22-51-DLB

UNITED STATES OF AMERICA                          PLAINTIFF

VS.             **UNITED STATES' POST-HEARING BRIEF**

ANTHONY M. WYNN                              DEFENDANT

\* \* \* \* \*

The United States submits the following post-hearing brief regarding the Defendant's motion to suppress [R. 34: Motion at Page ID# 160-164]. As set forth more fully below, the Defendant's motion should be denied. The defense has conceded that there are no issues with the stop of the vehicle or the decision to pat the Defendant down as part of an investigation into the possibility that the Defendant was driving while under the influence. The defense post-hearing brief focuses exclusively on two issues – whether the officers had a legal basis to remove and search the Defendant's underwear at the conclusion of a long struggle with the Defendant and whether the subsequent warrantless search of the vehicle he was driving was reasonable. The overwhelming evidence shows that both questions must be answered in the affirmative.

I.        **Factual Background:**

On August 28, 2020, shortly after 3:00 a.m., Officer Morris, a veteran patrol officer with twelve years experience, observed a vehicle turn from Madison Avenue

into the breakdown lane of Howard Litzler Drive. [R. 64: Transcript from April 3, 2023 at Page ID# 316-317.] The vehicle did not correct course into the actual roadway; but continued traveling down the breakdown lane. [*Id*. at 317-318.] This unusual behavior led Officer Morris to conduct a traffic stop. [*Id*.] Upon approaching the vehicle and contacting the Defendant, Officer Morris immediately noticed the smell of marijuana coming from the vehicle. [*Id*. at 319-320.] He requested Specialist Doug Ullrich to respond to the scene to investigate the Defendant for operating a motor vehicle while under the influence. [*Id*. at 319-320, 324.] The Defendant did not seem able to follow the officer's line of questioning; this raised additional concerns about his sobriety. [*Id*. at 323.] Officer Morris checked the Defendant through dispatch and received information that he was known for drug activity. [*Id*. at 324.]

Specialist Ullrich arrived within a minute of the initial stop. [R. 63: Transcript from March 16, 2023 at Page ID# 251.] He approached the Defendant, the driver and sole occupant of the vehicle. [*Id*. at 252.] Specialist Ullrich immediately noticed the smell of marijuana coming from the interior of the car and began to investigate to see if the Defendant was impaired. [*Id*.]

Specialist Ullrich has been with the Covington Police Department for more than eleven years. [*Id*. at 246.] He has been assigned as a traffic accident prevention officer for more than nine years. [*Id*. at 246.] He has conducted more than 5,000 DUI investigations and has been a certified drug recognition expert since 2017. [*Id*. at 247.] He received specialized training to determine when individuals are under the influence of substances other than alcohol, such as marijuana. [*Id*. at 247-248.] He has dealt

2

with individuals under the influence of marijuana thousands of times. [*Id*. at 249.]

Specialist Ullrich asked the Defendant to exit the vehicle to investigate the possible DUI offense and determine whether the smell of marijuana was from the Defendant or the vehicle. [*Id*. at 252-253.] Because this investigation now involved possible drug offenses, Specialist Ullrich was concerned for the possibility of weapons since he was aware that individuals carrying controlled substances often possess firearms. [*Id*. at 253.] The Defendant's answers to questions and movement in the car raised these concerns. [*Id*. at 253-254.] Specialist Ullrich asked the Defendant to step out of the car and place his hands on top of the car. [*Id*. at 254.] The Defendant refused to get out of the car. [*Id*.] This raised additional concerns that the Defendant either had a weapon or might attempt to flee in the vehicle. [*Id*. at 254-255.] Specialist Ullrich repeated the request to exit the car and specifically told the Defendant to place his hands on the car and not reach anywhere else. [*Id*. at 255.]

The Defendant got out in response to the renewed request; but reached toward his right hip area instead of placing his hands on the car. [*Id*. at 255-256.] Specialist Ullrich was concerned because this is the area where people carrying weapons usually keep them. [*Id*.] Based on this concern, Specialist Ullrich grabbed the Defendant to prevent him from retrieving anything from his waistband. [*Id*. at 256.] The Defendant tensed his entire body and became upset, so Specialist Ullrich secured him with handcuffs for safety reasons. [*Id*.]

Officer Morris returned from his cruiser and reported that he had learned the Defendant had a history of drug activity. [*Id*. at 256-257.] This further heightened

concerns about drugs and weapons. [*Id*. at 257.]

Specialist Ullrich performed a flat-hand pat down of the exterior of the Defendant's clothes and noticed a bag in the Defendant's pocket that was immediately apparent as marijuana. [*Id*. at 257, 284.] This officer has performed such actions multiple times a day for numerous years and described the characteristics of the bag that were consistent with marijuana from his experience. [*Id*. at 257-258.] The Defendant initially claimed the item was money but then admitted it was marijuana. [*Id*. at 272.] Specialist Ullrich removed the bag and confirmed that it contained marijuana. [*Id*. at 259.] Possession of marijuana is an arrestable offense. [*Id*.]

Specialist Ullrich continued the pat-down and noticed the Defendant attempting to prevent him from checking the groin area but pushing his front against the police cruiser. [*Id*.] This is a common location for individuals to conceal drugs and this reaction was common for individuals attempting to prevent police from seizing drugs concealed in that area. [*Id*. at 259-260.] Specialist Ullrich continued the pat down and checked the Defendant's groin. He immediately noticed a foreign object in the Defendant's groin – a bag or container in the front of the Defendant's underwear area. [*Id*. at 260-261.] Based on his training and extensive experience, Specialist Ullrich was certain that such an item in this area of the body under these circumstances would contain some sort of drugs. [*Id*. at 261.] The Defendant denied having anything in his underwear. [*Id*.]

Specialist Ullrich moved the Defendant from the current location to the front of bumper area of his cruiser to capture the activity on his dash camera as well as body

4

camera. [*Id*. at 261-262.] He knew any subsequent search would be of an intimate area and wanted to document it as much as possible. [*Id*.] Specialist Ullrich explained what he was doing and explained the need to remove the drugs from the Defendant's underwear. [*Id*. at 262.] The Defendant became belligerent and hysterical so Specialist Ullrich left the Defendant in the custody of the other officers while he went to get gloves for the search. [*Id*. at 262.]

The officers were aware that Specialist Ullrich had seized marijuana from the Defendant and commented about the bag of drugs in the Defendant's underwear. [*Id*. at 302; R. 64: Transcript from April 3, 2023 at Page ID# 325-326.] The Defendant attempted to walk away from the officers. [*Id*.] They were concerned about him destroying evidence or being hit by a passing car, so they stopped the Defendant. [*Id*. at 326-327.] The Defendant began to actively struggle with the officers. [*Id*. at 303, 327.] He climbed onto the bumper of the cruiser and thew himself on the hood, damaging it. [*Id*. at 264, 303.] The Defendant continued to struggle. [*Id*. at 303.]

Specialist Ullrich was concerned about the amount of unknown controlled substances in the Defendant's underwear and the danger to the Defendant and others if the substance were not removed. [*Id*. at 263.] Based on his experience, Specialist Ullrich was aware that the substance might be a form of fentanyl that is extremely dangerous even in casual contact. [*Id*. at 263-264.] Attempting to transport the Defendant to the jail or hospital without removing the substance from his underwear created substantial risks of destruction of evidence as well as injury to the Defendant and others. [*Id*. at 263-264, 295-296.] Even placing the Defendant in handcuffs in the

back of a police cruiser would not remove those dangers. [*Id*. at 264-265, 278, 281.] Based on these risks, the officers decided that it was necessary to remove the item from the Defendant's underwear before transporting him. [*Id*.]

Specialist Ullrich explained the circumstances to the Defendant and told him it was necessary to remove the drugs from his underwear. [*Id*. at 265.] He refused to comply and continued to violently resist the officers for an extended time. [*Id*.] Specialist Ullrich was concerned that the struggle could cause the bag of drugs to rupture in the Defendant's underwear and endanger all the participants. [*Id*. at 267.]

He informed the Defendant that he would use shears to remove the Defendant's underwear of the Defendant continued to resist the officers and refuse to allow them to remove the bag of drugs. [*Id*.] The Defendant continued to fight, so Specialist Ullrich got his shears and used them to cut the sides of the Defendant's underwear and remove it. [*Id*.] The officers did not remove the Defendant's pants to perform this action because the pants were very loose and had come partially down from the Defendant's extensive struggle with the officers. [*Id*. at 267-268.] Once the underwear was removed, Specialist Ullrich immediately located a baggie containing several grams of suspected cocaine from the same area where he initially felt it during the pat-down. [*Id*. at 268.]

Officers Elsbernd and Morris completed the search of the vehicle after the Defendant was removed from the scene. [R. 63: Transcript from March 16, 2023 at Page ID# 304-305; R. 64: Transcript from April 3, 2023 at Page ID# 333, 336.] They seized a gun from the glove compartment of the vehicle. [R. 63: Transcript from

March 16, 2023 at Page ID# 333.] They also checked the trunk and located a backpack containing a second gun and additional items of evidence. [R. 63: Transcript from March 16, 2023 at Page ID# 308.]

Specialist Ullrich was never able to complete the DUI investigation due to the Defendant's decision to resist and struggle with the officers. [*Id*. at 274.] It was clear that the Defendant was going to be arrested for possession of marijuana based on the circumstances and his behavior and Specialist Ullrich informed the Defendant that he was under arrest even before the drugs in his underwear were seized. [*Id*. at 274-275.] The undisputed evidence is that the Defendant would have been taken to the Kenton County Detention Center and fully searched at that location based on his possession of marijuana and resisting arrest. [*Id*. at 275, 293.] It was also undisputed that the vehicle would have been impounded and fully searched, including containers in the vehicle, pursuant to Covington Police policy. [*Id*. at 275-276, 290-291, 306.]

II.   **Legal Analysis:**

  A.   **Officers lawfully removed and searched the Defendant's underwear.**

Officers immediately smelled marijuana upon approaching the vehicle. This heightened their existing knowledge of the prior traffic offense and gave them further reasonable suspicion to investigate the possibility of the Defendant operating a vehicle while under the influence and possessing a controlled substance. The defense post-hearing brief does not challenge the decision to pat the Defendant down under these circumstances. Once the pat-down began, Specialist Ullrich immediately felt the package of marijuana in the Defendant's pocket. The Defendant admitted that it was marijuana

and Specialist Ullrich recovered it from the Defendant's pocket. At that time the officers had probable cause to arrest the Defendant and conduct a full search of his person.

In *United States v. Montgomery*, 377 F.3d 582, 586 (6th Cir. 2004), the Sixth Circuit held that "under the 'search incident to lawful arrest' exception to the warrant requirement, a law enforcement officer may conduct a full search of an arrestee's person incident to a lawful custodial arrest." (citing *United States v. Robinson*, 414 U.S. 2185, 234-35, 38 L. Ed. 2d 427, 94 S. Ct. 467 (1973)).

Under this Sixth Circuit precedent, a complete search of Defendant's person was justified. Specialist Ullrich noted the presence of a foreign object in the Defendant's underwear area during the continued pat-down. Specialist Ullrich has repeatedly encountered individuals hiding controlled substances in this area and was immediately aware that the object was consistent with such substances. The Defendant's subsequent attempt to leave the officers and violent resistance created additional grounds to arrest him. Specialist Ullrich did an extraordinary job of describing the dangers of destruction of evidence and harm to the Defendant and the officers if they had attempted to transport him prior to removing the baggie of drugs from his underwear. The Defendant has offered no evidence or credible argument to the contrary. In any event, a full strip search was authorized upon the Defendant's admission to the jail. This search would have inevitably uncovered the bag of cocaine from the Defendant's groin area even if the officers had not completed their search at the side of the road.

*Arizona v. Gant*, 556 U.S. 332 (2009) supports the search of the passenger compartment of the vehicle since the arrest was for drug possession, among other things,

8

and the officers were entitled to search for evidence of that offense. "[W]e also conclude that circumstances unique to the vehicle context justify a search incident to a lawful arrest when it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.'" *Arizona v. Gant*, 556 U.S. 332, 343 (2009) (citing *Thornton v. United States*, 541 U.S. 615, 632 (2004).

The Sixth Circuit applied this principle in *United States v. Alexander*, 954 F.3d 910, 917 (6th Cir. 2020). That case held that the existence of probable cause to make an arrest for drug possession and driving offenses justified a vehicle search incident to arrest. *Id*. "Here, it would have been reasonable . . . to conclude that relevant evidence relating to the drug arrest might also be in the vehicle, which would have provided a valid basis for the search." *Id*. The case goes on to note that the presence of drugs and items consistent with trafficking also "would have established the probable cause necessary to conduct a search of the vehicle pursuant to the automobile exception. *See California v. Carney*, 471 U.S. 386, 392-93, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985); *United States v. Lyons*, 687 F.3d 754, 770 (6th Cir. 2012)." *Id*.

Here, the officers found marijuana and an amount of cocaine consistent with trafficking on the Defendant. The search of the passenger compartment turned up a loaded handgun. These events established probable cause to believe the vehicle would contain additional evidence of drug trafficking and support the search of the trunk. In addition, the Covington Police Department has an inventory policy that requires officers to fully search the contents of any vehicle prior to impounding it. This policy is sufficient to justify the search of the contents of the trunk of the vehicle. "An inventory

9

search is a recognized exception to the Fourth Amendment's warrant requirement: where the police are in lawful custody of a vehicle, they may conduct an inventory search to catalogue its contents pursuant to standardized criteria. *Alexander* at 915 (citing *Florida v. Wells*, 495 U.S. 1, 4 (1990).

### III. Conclusion

Based upon the foregoing, the Defendant's motion to suppress should be denied.

Respectfully submitted,

CARLTON S. SHIER, IV
UNITED STATES ATTORNEY

By: s/ Anthony Bracke
Assistant United States Attorney
207 Grandview Drive, Suite 400
Ft. Mitchell, KY 41017
PHONE: 859-655-3200
Anthony.Bracke@usdoj.gov

### CERTIFICATE OF SERVICE

On July 15, 2023, I electronically filed this document through the ECF System, which will deliver a copy of the foregoing to counsel for the Defendant.

s/ Anthony J. Bracke
Assistant United States Attorney